BOYCE F. MARTIN, Jr., Circuit Judge.
The Pension Benefit Guaranty Corporation appeals the district court’s determination that it lacks capacity to maintain a proof of claim against the bankrupt White Motor Corporation for unfunded benefits owed to White Motor employees.
White Motor Corporation is a manufacturer of car and truck equipment. Two of its major plants are located in Cleveland, Ohio and Exton, Pennsylvania. Employees at each plant are covered by pension plan programs provided by the company. Beginning in 1967, White Motor entered into separate letter agreements with the United Auto Workers guaranteeing that vested pension benefits for workers with at least ten years seniority would be paid in full in the event of plan termination. The letters provided the company with a choice of three different methods for meeting its guarantee obligations: (1) it could deposit necessary monies into the pension fund; (2) it could purchase annuities; or (3) it could pay benefits directly to employees as they came due.
On September 4, 1980, White Motor filed a petition for reorganization under Chapter 11 of the Bankruptcy Code. Thereafter, the pension plans at issue were terminated and the Pension Benefit Guaranty Corporation, a wholly owned, government entity, was appointed successor trustee for the pension funds. On May 28, 1982, Pension Benefit filed a proof of claim against White Motor for approximately $50.6 million, or the amount owed by White Motor to its employees under the guarantee letters. White Motor, the Creditors’ Committee, and the UAW all filed motions in opposition. On November 7,1982, the UAW filed *374 its own claim against White Motor for four million dollars, or the amount of pension benefits owed by White Motor not also guaranteed by Pension Benefit pursuant to 29 U.S.C. § 1322.
On January 28, 1983, the bankruptcy court found that Pension Benefit lacked capacity as trustee for the pension funds to bring this claim. According to the court, Pension Benefit did not have power as a third-party beneficiary to enforce the guarantee letters, both because it was an unintended beneficiary of the agreements (the employees were the intended beneficiaries) and because White Motor could fulfill its obligations under the guarantee letter in three different ways, only one of which would inure to Pension Benefit’s advantage (deposit of monies in the pension funds). The district court affirmed the bankruptcy court’s decision, but without benefit of briefs, argument, and possibly the record. On appeal, we reverse.
We need not decide the difficult issue of whether the Pension Benefit Guaranty Corporation has capacity as a third-party beneficiary to enforce the guarantee letters because we find that Pension Benefit can sue as a co-debtor to White Motor. Interim Bankruptcy Rule 3002 states: “If a creditor has not filed his proof of claim ..., a person who is or may be liable with the debtor to that creditor, or who has secured that creditor, may ... execute and file a proof of claim pursuant to this rule in the name of the creditor.” [1] The purpose of this provision is to protect a co-debtor or surety from creditors who wait until bankruptcy proceedings are finished to recover from the solvent debtor, leaving that debt- or with no recourse against his co-debtor who has been discharged from all obligations by the completed bankruptcy proceedings. See Collier on Bankruptcy 11 502.05 at 502-76 (15th ed. 1981). In our case, Pension Benefit is a co-debtor with White Motor for $46 million in unfunded pension benefits. It does not matter, contrary to White Motor’s assertions, that the source of Pension Benefit’s liability for the pension benefits, 29 U.S.C. § 1322, is different from the source of White Motor’s liability, the guarantee letters. The fact remains that each party is liable to the same White Motor pensioners for the same $46 million worth of pension benefits to be paid out in the same fashion. Hence, they are co-debtors.[2] Moreover, Pension Benefit’s liability on the pension debt is clearly secondary to White Motor’s. Pension Benefit is simply the guarantor of White Motor’s obligations. See In re Alan Wood Steel Co., 4 Bankr. Ct.Dec. 921, 922 (Bankr.E.D.Pa.1978). Pension Benefit must pay if and only if White Motor does not.
White Motor could have avoided co-debt- or status with Pension Benefit by limiting its liability to funds already contributed at the time of plan termination. See Nachman Corp. v. Pension Benefit Guaranty Corp., 446 U.S. 359, 384-85, 100 S.Ct. 1723, 1737-38, 64 L.Ed.2d 354 (1980); Murphy v. Heppenstall Co., 635 F.2d 233, 239 (3d Cir.1980), cert. denied, 454 U.S. 1142, 102 S.Ct. 999, 71 L.Ed.2d- 293 (1981). In that *375 event, Pension Benefit would have become directly responsible for payment of the benefits pursuant to 29 U.S.C. § 1322. Pension Benefit would then be authorized by statute to recover its expenditures from White Motor, but that recovery would be limited to thirty percent of White Motor’s net worth. See 29 U.S.C. § 1362(b). Because White Motor’s current net worth is zero, there would have been no recovery. But that is not what happened in this case. White Motor committed itself to making good on all pension benefits earned by its employees with more than ten years seniority, and that commitment must bé kept.[3]
White Motor argues that Pension Benefit cannot raise the issue of co-debtor standing on appeal because it did not argue the issue below. The general rule is that appellate courts will not give consideration to issues not raised below. See, e.g., Bannert v. American Can Co., 525 F.2d 104, 111 (6th Cir.1975), cert. denied, 426 U.S. 942, 96 S.Ct. 2662, 49 L.Ed.2d 394 (1976). There is an exception to the rule when a pure question of law is involved and a refusal to consider the issue would result in a miscarriage of justice. Aluminum Co. of America v. Sperry Products, Inc., 285 F.2d 911, 915 (6th Cir.1960), cert. denied, 368 U.S. 890, 82 S.Ct. 142, 7 L.Ed.2d 87 (1961). However, we need not decide whether refusal to consider Pension Benefits’ co-debtor argument would result in manifest injustice because we find that Pension Benefit was denied an adequate opportunity to make its argument below. The district court affirmed the bankruptcy judge’s decision in this case on the same day it was issued. He reaffirmed that initial decision three weeks later, still without benefit of briefs or oral arguments from the parties. This is an abuse of the certification process for bankruptcy cases and provides a basis for remanding this case to the district court for appropriate proceedings.
Section (e)(1) of the Emergency Interim Bankruptcy Rule, approved by this court in White Motor Corp. v. Citibank, N.A., 704 F.2d 254 (6th Cir.1983), provides that appeals from bankruptcy decisions are to be heard in district court pursuant to the procedures set forth in Part VIII of the Bankruptcy Rules. Part VIII allows each party to file briefs (Rule 8009) and, at the discretion of the district judge, appear for oral argument (Rule 8012). White Motor argues that these procedures apply only to appeals brought pursuant to section e(2)(A)(i) and not to certifications, like the present case, brought pursuant to section e(2)(A)(ii). While we agree that a case properly before the district court on certification need not follow Part VIII procedures, we find that this was not a proper case for certification. In our view, the bankruptcy court can use the certification procedure only in those cases where the parties do not wish to appeal but where the bankruptcy judge, for whatever reason, believes that the issues involved should receive the attention of the district judge. Certification is not to be used when, as here, the parties want to appeal on their own. One purpose of the Interim Rule is to ensure that litigants can obtain independent review of their bankruptcy claims by an Article III court if they so desire. The review in this case fell far short of that required.
White Motor argues that section e(2)(B) of the Interim Rule expressly modifies the procedural requirements of Part VIII of the Bankruptcy Rules by making the district court sole judge of whatever new evidence need be submitted: “In conducting review, the district judge may hold a hearing and may receive such evidence as appropriate.” However, as we read the section, it does nothing to modify the parties’ right to brief the issues before the district *376 judge. In this case, the parties were not given the opportunity to brief the issues.
Nonetheless, we decline to remand this case for consideration of the co-debtor-standing issue by the district court. To do so would needlessly prolong the proceedings. The only issues on appeal are questions of law which have been fully briefed and argued. Remand would serve no purpose. However, because Pension Benefit was wrongly denied an opportunity to make its co-debtor argument in the district court, we will allow it to make such an argument before us.
Accordingly, we find that the Pension Benefit Guaranty Corporation does have the capacity as White Motor’s co-debtor to make a proof of claim against White Motor for the amount of pension benefits owed under the guarantee letters which are also guaranteed by the Corporation. The case is remanded to the district court for further proceedings consistent with this opinion.

. Interim Rule 3002 was the bankruptcy rule in effect at the time these proceedings were heard before the bankruptcy court. This rule has since been superceded by Bankruptcy Rule 3005, which took effect on August 1, 1983. The language of the new rule is essentially the same as that of the old.

. White Motor also contends that Pension Benefit cannot -claim co-debtor status under Rule 3002 because such status can only be invoked so long as the creditor has failed to file his own claim: "The creditor may nonetheless file a proof of claim ... and it shall supercede the proof of claim filed [by a co-debtor].” Because the UAW has filed a claim under the guarantee letters, argues White Motor, Pension Benefit’s claim is not valid. We do not agree. If this language is to make sense, it must be read to preclude a co-debtor’s claim only to the extent of his creditor’s claim. Otherwise, a creditor could file for one dollar of a $50 million debt and effectively foreclose a proof of claim by the co-debtor for the remainder. Moreover, even if we assume that such a foreclosure is possible, that assumption does not affect our result. Here, the claim filed by the UAW covers only those benefits not guaranteed by Pension Benefit, or, put another way, only those benefits for which Pension Benefit is not a co-debtor with White Motor. Therefore, the preclusion provisions of Rule 3002 are never called into play. For these reasons, then, Pension Benefit's claim against White Motor has not been superceded by the UAW claim.

. White Motor asks that we read the escape clause in its guarantee letter so as to relieve it from direct responsibility for all pension benefits now guaranteed by the Pension Benefit Guaranty Corporation. This we cannot do. The clause reads: "The guarantee shall be automatically cancelled in the event of enactment of legislation providing for the reinsurance of benefit plan benefits at a level at least equal to the guarantee set forth herein.” All parties agree that Pension Benefit is not responsible for at least four million dollars of the pension guarantee. Therefore, by language, at least, the clause cannot be given effect.